**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Union Pacific Railroad Company, a Delaware corporation,<br><br>                     Plaintiffs,<br><br>v.<br><br>Ambian Dairy, LLC, an Arizona limited liability company; et al.<br><br>                     Defendants. | No. CV-12-02386-PHX-GMS<br><br>**ORDER** |
| Luis Hernandez-Aguilar and Sandra Luz Monzón de Hernandez, husband and wife.<br><br>                     Counterclaimants,<br><br>v.<br><br>Union Pacific Railroad Company, a Delaware corporation; Does I-X; Black Corporations I-X,<br><br>                     Counterdefendants. | |

Pending before the Court is Defendants/Counterclaimants' Amended Motion to Stay Federal Action Pending Resolution of Parallel State Court Proceedings. (Doc. 23). For the reasons discussed below, Defendants/Counterclaimants' Motion is granted.

**BACKGROUND**

This case arises from a railroad crossing accident that injured Defendant/Counterclaimant Luis Hernandez-Aguilar and caused property damage to

Plaintiff/Counterdefendant Union Pacific Railroad Company ("UP"). On the morning of May 15, 2012, a UP train was traveling westbound near Gila Bend, Arizona, approaching the Paloma Ranch Railroad Crossing (the "Crossing"). (Doc. 27 at 2.) At the time, Aguilar was traveling south on Paloma Ranch Road in a front loader.[1] (Doc. 23 at 2.) As Aguilar drove over the Crossing, the UP train and Aguilar's front loader collided. (*Id.*) Aguilar suffered severe injuries and brain damage while UP suffered property damage to the lead locomotive and incurred costs associated with the non-use of the locomotive and train delays. (Doc. 23 at 2; Doc. 27 at 2.)

On November 7, 2012, UP filed this diversity action against Defendants/ Counterclaimants Luis Hernandez-Aguilar and Sandra Luz Monzon de Hernandez (the "Aguilars"), and Defendants Ambian Dairy, LLC and Ambian Management Inc., Luiz Aguilar's purported employer. (Doc. 1.) The Complaint states a state law claim alleging that UP suffered property damage totaling $81,760.04 as a result of Aguilar's failure to stop at the stop sign near the Crossing and yield to UP's approaching train. (Doc. 1 at 3-4.) Defendants were served with the Complaint on February 11, 2013. (Docs. 10, 11.) The Aguilars answered the Complaint and brought a compulsory Counterclaim on March 4, 2013. (Doc. 12.) They seek damages for the severe and permanent injuries to Luiz Aguilar arising from UP's alleged negligence in operating the train and the Crossing.

The property adjacent to the Crossing is owned by the Paloma Irrigation and Drainage District (the "PIDD"), an Arizona state municipality. UP alleges that in exchange for permission to cross UP's right-of-way at the Crossing, the PIDD entered into a Private Road Crossing Agreement with UP and assumed responsibility to keep the Crossing reasonably safe. (Doc. 27 at 4.) On November 8, 2012, the Aguilars served a notice of claim on the PIDD pursuant to A.R.S. § 12-821.01. The Aguilars then filed a state action in the Pima County Superior Court on February 25, 2012. (Doc. 23-1.) In that

---

[1] UP asserts that the front loader was leased by Defendants Ambian Dairy, LLC and Ambian Management Inc. from a third party, (Doc. 27 at 2), but those Defendants dispute the assertion, (Doc. 23 at 3 n.1).

action, the Aguilars make similar allegations of negligence against both UP and the PIDD.[2] On April 18, 2013, the Aguilars moved to stay this action. (Doc. 23.)

**DISCUSSION**

## I. LEGAL STANDARD

The Supreme Court has held that in cases "involving the contemporaneous exercise of concurrent jurisdiction," considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" may result in a federal court staying litigation. *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976). Nevertheless, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and the doctrine of *Colorado River* should be invoked only in "exceptional circumstances." *Id.* at 817-18.

## II. EXCEPTIONAL CIRCUMSTANCES

To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay, "the district court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'" *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colorado River,* 424 U.S. at 818). The decision does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983); *see also Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.,* 843 F.2d 1253, 1257 (9th Cir. 1988) (noting that factors are to be applied in a "pragmatic and flexible" way). The Ninth Circuit has identified eight factors for assessing the appropriateness of a *Colorado River* stay:

(1) which court first assumed jurisdiction over any property at stake; (2) the

---

[2] The PIDD is not joined in this action but was designated by UP as a non-party at fault. (Doc. 27 at 4.)

inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co.*, 656 F.3d at 978-79 (internal citation omitted). If there is any doubt as to whether a factor weighs in favor of either party, that factor should be resolved against a stay. *Id.* at 979. The Parties agree that the first factor does not apply to the facts of this case because there is no property at stake. The parties further agree at least that, given the need to avoid piecemeal litigation, factor three, and the substantial similarity of the two actions, factor eight, one of the two courts before which this matter is pending, should stay the case. The Aguilars argue that this Court should stay further action pending resolution of the state court matters. UP asserts that this Court should exercise its pending jurisdiction and the state court should stay further matters pending resolution of the case in this court. After consideration of the appropriate factors, this Court stays this matter pending resolution of the similar state court case.

### A.    Inconvenience of Federal Forum

When considering the inconvenience of the federal forum, the question is "whether the inconvenience . . . is so great that this factor points toward abstention." *Travelers Indem. Co. v. Madonna,* 914 F.2d 1364, 1368 (9th Cir. 1990) (internal citation omitted). The Aguilars argue inconvenience based on the fact that none of the Parties are located in Phoenix and the accident which gave rise to this action took place outside of Phoenix. The Aguilars assert that UP's offices and records are located in Tucson where the state action is pending although UP maintains that it has offices in both Phoenix and Tucson. Further, the Aguilars point to the fact that the UP employees and representatives responsible for the crossing where the accident occurred are purportedly located in Tucson.

- 4 -

UP contends that the Aguilars overstate the inconvenience of litigating in federal court. UP asserts that the federal court is about 56 miles closer to the site of the injury than the state court. The Aguilars live in Gila Bend, which is a shorter distance to the federal court. Further, the accident was investigated by the Maricopa County Sheriff's Office which is located close to the federal court, the medical providers that treated Luis Aguilar's injuries are in the Phoenix area, and many of the experts to be retained in this action would be from Phoenix. UP also argues that it is more convenient to fly out corporate representatives from Nebraska to Phoenix rather than Tucson, and litigating in federal court would save travel time for counsel located in Phoenix.

The question is not whether the federal forum is a better or more convenient forum but whether the inconvenience of that forum is so great as to favor abstention. *See Evanston Ins. Co. v. Jimco, Inc.,* 844 F.2d 1185, 1192 (5th Cir. 1988); *Travelers,* 914 F.2d at 1368. Although the Parties may have to shift resources to Phoenix from Tucson and other locations, the approximate distance of 120 miles from one forum to the other does not establish a great inconvenience. *See Travelers*, 914 F.2d at 1368 (finding this factor to be neutral when the federal court was 200 miles further away than the state court). Accordingly, this factor is neutral in the analysis.

### B.     Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters,* 843 F.2d at 1258. The general rule regarding parallel suits is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River,* 424 U.S. at 817 (internal citation omitted). "The mere possibility of piecemeal litigation does not constitute an exceptional circumstance." *R.R. St. & Co.,* 656 F.3d at 979 (citing *Travelers,* 914 F.2d at 1369). Instead, the case must raise a "special concern about piecemeal litigation," *Travelers,* 914 F.2d at 1369, which can be remedied by staying the federal proceeding, *R.R. St. & Co.,* 656 F.3d at 979.

This case involves special concerns about duplicative efforts and conflicting results. The resolution of this matter, in either the state or federal court, will resolve the liability of UP, PIDD, and the Aguilars vis-à-vis all parties. This gives rise to the prospect of inconsistent verdicts. Further, although PIDD is named as a non-party at fault in response to the Aguilar's Counterclaim, the Court would not have jurisdiction over PIDD. This claims is brought under diversity jurisdiction and PIDD is a non-diverse Arizona entity. It is more efficient to have PIDD participate in the litigation and determination of its own fault in the context of the damages claims and assignment of liability.

The Aguilars' childrens' claims, presumably for loss of consortium, may add different elements of damages to be assigned to the liable parties. The state court would determine of whether such damages exist, since the children are not parties here. Although the Dairy is not a party in the state action, the Dairy's liability appears to be a matter of respondeat superior. Therefore, its involvement does not add to the amount of damages to be determined but rather adds another party to which liability may be assigned. Even if there were separate claims of negligence brought against the Dairy, UP could add the Dairy as a party to the state action.

UP points to the fact that the federal action has actually progressed further than the state action as there has been a Case Management Conference set in this matter while "[n]o scheduling conference has been requested or ordered in the [state] action" as of the time of briefing. (Doc. 27 at 9.) But the Court has not made substantive rulings in this case. Because there are special concerns about the duplicative nature of the two actions and potential for conflicting verdicts as well as the ability of the state court to provide comprehensive resolution of the matter, this factor favors a stay.

### C.    Order of Jurisdiction

This factor "must be applied in a pragmatic, flexible manner so that priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions." *American Int'l*

*Underwriters,* 843 F.2d at 1258 (citing *Cone,* 460 U.S. at 21). Further, "the mere existence of a case on the state docket in no way causes a substantial waste of judicial resources nor imposes a burden on the defendant[ ] which would justify abstention." *Travelers,* 914 F.2d at 1370 (internal quotation marks and citation omitted).

The federal action was filed on November 7, 2012, (Doc. 1), approximately three months before the state action was filed on February 25, 2013, (Doc. 23 at 3). The Aguilars assert that the personal injury claim is the primary focus in this matter and that the state court was first to obtain jurisdiction over that claim. UP contends that after it filed this action, the Aguilars strategically filed the state action first and then waited for ten days to file their compulsory counterclaim in the federal action to support a later argument for staying it. However, the order of filing is not dispositive here. As discussed *supra*, no significant progress has been made in either action. Therefore, this factor is also neutral in the analysis.

### D.    Applicable Law

Although the presence of federal-law issues must always be a major consideration weighing against surrender of jurisdiction, the presence of state-law issues may weigh in favor of that surrender only "in some rare circumstances." *R.R. St. & Co.,* 656 F.3d at 980 (quoting *Cone,* 460 U.S. at 26). When a case involves "routine issues of state law," this factor is considered neutral. *See Travelers,* 914 F.2d at 1370 (claims of misrepresentation, breach of fiduciary duty, and breach of contract); *R.R. St. & Co.,* 656 F.3d at 980-81 (claims of breach of contract, indemnification, and subrogation).

This diversity action involves routine state law claims of property damage and personal injury involving allegations of negligence. UP offers that it expects to file at least two motions for partial summary judgment on the ground of federal preemption relating to the Aguilars' claims insofar as those claims are based on the UP train's speed and the alleged inadequacy of audible warning by the train horn. While that potential involvement of federal law issues is relevant, the Aguilars, in their Reply, have disavowed using that basis for their claims as they admit that the train horn and speed met

the minimum federal safety standards. (Doc. 32 at 7.) Thus, the presence of routine state law claims and the marginal likelihood of issues of federal law arising in this case render this factor to be neutral.

### E.     Adequacy of State Court Proceedings

"A district court may not stay . . . the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants." *R.R. St. & Co.,* 656 F.3d at 981. For example, a stay is not proper if there is a possibility that the parties will not be able to raise their claims in the state action. *See Cone,* 460 U.S. at 26 (emphasizing that the state court might lack the power to grant a motion to compel arbitration sought by plaintiff in federal court); *Holder v. Holder*, 305 F.3d 854, 869 n.5 (9th Cir. 2002) (noting that the state court probably lacked jurisdiction to hear the plaintiff's federal ICARA claim). Importantly, this factor does not consider the federal court's adequacy to protect state rights. *Travelers,* 914 F.2d at 1370.

The Aguilars argue that the state action will adequately protect UP's rights because UP can bring a counterclaim for property damage, based on the same issue of negligence, in the state action. Further, the resolution of the personal injury claim in state court will also decide the property damage claim because the liability issues are dispositive to both. As discussed above, UP may bring any claims it has against the Dairy in the state action as opposed to in this action. UP does not contest these arguments. Instead, UP argues that this factor should weigh against abstention because "its rights as an out-of-state corporate litigant cannot be adequately protected in state courts without potential prejudice." (Doc. 27 at 12.)

It is true that "[t]he purpose of diversity jurisdiction is to provide a federal forum for out-of-state litigants where they are free from prejudice in favor of a local litigant." *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006) (quoting *Tosco Corp. v. Cmtys. for a Better Env't.,* 236 F.3d 495, 502 (9th Cir. 2001)). However, "[s]uch bias would seem to be most prevalent when a local party sues a foreign corporation that has little if any presence in the district." *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d

401, 406 (5th Cir. 1987). That bias "is minimized when a corporation, even though incorporated in another state, has significant contact with the district through, for example, a factory that employs local people." *Id.* Here, UP admits that it has a local office in Tucson, the situs of the state court proceeding, and the Aguilars contend that UP "provides jobs and income in Tucson," (Doc. 32 at 9). As a local employer with presence in the district, the risk of bias in state court is marginal. While the local bias argument is relevant to understand why the Court has a "virtually unflagging obligation" to exercise jurisdiction where it is proper, *Colorado River*, 424 U.S. at 817, it is not necessarily relevant when determining the adequacy of state court proceedings. The latter factor focuses on whether a party's claims would be heard and receive due consideration in the state action. *See Cone,* 460 U.S. at 26. UP does not dispute that it may bring a state law counterclaim in the state proceeding. Thus, this factor is neutral.

### F.    Forum Shopping

This factor considers "the vexatious or reactive nature of either the federal or the state litigation." *Cone,* 460 U.S. at 17 n.20. "Forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers,* 914 F.2d at 1371 (citing *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (plaintiff brought claims in federal court after three and a half years of litigating in state court to avoid adverse rulings); *American Int'l Underwriters,* 843 F.2d at 1259 (after filing in state court, plaintiff brought suit in federal court to avoid the state court's unfavorable evidentiary rules)). The mere fact that parties file separately in their preferred forums does not establish forum shopping. *R.R. St. & Co.,* 656 F.3d at 981.

Both parties point to the order of filing the two actions as evidence of forum shopping. The Aguilars argue that UP raced to federal court by "scraping together $81,000 in questionable property damages to justify a preemptive filing in this Court." (Doc. 32 at 10.) As stated *supra*, the Court will not address the merits of UP's case and there is "nothing invidious about a plaintiff filing suit in federal court before his opponent

files a similar suit in state court." *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 542 (9th Cir. 1985). Further, "the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III." *First State Ins. Co. v. Callan Assocs., Inc.,* 113 F.3d 161, 162 (9th Cir. 1997).

UP contends that after it filed first, the manner in which the Aguilars filed second in state court is suspect. UP points to the fact that the Aguilars filed the state action ten days before filing their Answer and Counterclaim in this action. The Aguilars assert that they had always intended to bring their state law personal injury claim in state court. The Court will not make any inference based on the Aguilars' approach; "it may be that [the Aguilars] merely acted within [their] rights in filing a suit in the forum of [their] choice." *Travelers*, 914 F.2d at 1371.

UP also argues that the Aguilars can pursue a comprehensive action in federal court but are choosing not to join relevant parties and claims. However, the Aguilars contend that they were required to file in state court because they would not be able to join the non-diverse PIDD, an Arizona state municipal entity, as a third-party defendant and their children as third-party claimants in this action. The Aguilars had good cause to file in state court in order to pursue a comprehensive action. UP was also within its rights to file suit in federal court. Accordingly, neither party can be accused of "forum shopping," so this factor is neutral in the analysis.

### G.     Parallel Suits

This final factor considers whether the state court proceeding "sufficiently parallels" and will resolve all issues in the federal proceeding. *R.R. St. & Co.,* 656 F.3d at 982. "Exact parallelism" between the suits is not required. *Nakash,* 882 F.2d at 1416. Further, "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay." *R.R. St. & Co.,* 656 F.3d at 982 (internal quotation marks and citations omitted). The Court must assess the weight of this factor based on the state of affairs "at the time of the *Colorado River* analysis." *Id.*

The Parties agree that all of the issues present in this action can be resolved in state court. (Doc. 27 at 6 n.3; Doc. 32 at 10-11.) UP can yet file its property damage claim as a counterclaim in the state action. Further, both actions are based on the same injury, and the state action will presumably resolve liability issues that pertain to the Aguilars' personal injury claim and UP's property damage claim. The suits are sufficiently parallel and the state court can resolve the issues in this action. Thus, this factor weighs in favor of a stay.

## CONCLUSION

The Court finds that two of the *Colorado River* "exceptional circumstances" factors weigh in favor of a stay while the rest of the factors are neutral. The fact that the federal and state actions are greatly parallel and the state action will provide a more comprehensive resolution of the matter are sufficient bases upon which to stay this action.

**IT IS THEREFORE ORDERED** that Defendants' Amended Motion to Stay Federal Action Pending Resolution of Parallel State Court Proceedings (Doc. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties jointly file a Status Report on **November 19, 2013 and every ninety (90) days thereafter** until the stay has been lifted.

Dated this 21st day of August, 2013.

G. Murray Snow
United States District Judge